No. 78,042

In the Matter of JEFFREY LYNN BAXTER, *Respondent.*

(940 P.2d 37)

Opinion filed May 30, 1997.

*Marty M. Snyder*, deputy disciplinary administrator, argued the cause, and *Mark F. Anderson*, disciplinary administrator, was with him on the formal complaint for petitioner.

*William R. Sampson*, of Shook, Hardy & Bacon, L.L.P., of Overland Park, argued the cause for respondent, and *Jeffrey Lynn Baxter*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent Jeffrey Lynn Baxter, an attorney admitted to the practice of law in Kansas. The complaint filed in case No. A6193 was heard before a panel of the Kansas Board for Discipline of Attorneys. The essential facts, as determined by the panel, and the panel's recommended discipline are not in dispute. Baxter has not filed exceptions to the amended final hearing report.

## Case No. A6193

The amended final hearing report stated:

"2. In early 1993, Respondent was retained by Complainant, Professor William Dawes to represent him in a civil rights action against Kansas State University. Complainant paid $12,500 towards Respondent's fee, having borrowed almost half that amount. Following mediation conducted by retired Judge Herbert Walton, the case settled. The parties agreed to split the mediator's fee and the University agreed to pay damages and attorneys fees, although it disputed part of Respondent's bill. When Respondent's firm received the University's check for the attorneys fees, the check was short approximately $6,000.00. The check was deposited in the firm account (not the trust account) and Respondent did not advise Complainant the money had arrived. From the time Respondent's firm received the check (July 1994) until February 1995, Respondent did not explain to Complainant that the University had refused to pay $6,284.00 of the attorneys fees. In fact, Respondent did not respond to Complainant's letter of November 1994. When Complainant wrote again in January, 1995, Respondent phoned a week

later and promised to send Complainant a check. By letter dated February 9, 1995, Respondent told Complainant of his agreement to take less than he billed and asked Complainant to reduce his reimbursement, but wrote he (Respondent) would do what Complainant thought right. Complainant wrote back that he would not agree to reduce his reimbursement and on March 6, 1995, filed a complaint with the Disciplinary Administrator's office. Respondent's firm paid Complainant in full with interest by check dated 05-07-96 drawn on the Shook, Hardy and Bacon trust account.

"3. In addition to not reimbursing Complainant, Respondent failed to pay the agreed upon share of the Mediator's fee. Respondent's Answer states that Respondent did not know about this agreement. This payment was finally made by certified check in June 1995.

"4. Professor Dawes summarized his dealings with Respondent and asked the Panel to recommend permanent disbarment. He explained that he had lost confidence in Respondent and his firm, and isn't sure where to look for counsel now.

"5. Respondent testified about the nature of his practice, his civic activities, and prior complaints that were resolved without discipline. He explained that in the spring of 1994 he suffered from nervous exhaustion and had to be transported by ambulance to the hospital. Shortly thereafter, he was diagnosed by his psychologist, Dr. Swaran K. Jain, as suffering from major depression. Dr. Jain testified that Respondent suffered from stress, nervousness, anxiety, and exhaustion, that resulted in impairment and caused the problems with Complainant. During this time the check for attorneys fees arrived at the firm and Respondent states that he was unaware that the check was deposited in the firm's account. Respondent received treatment for depression, but even after learning the money was wrongly in the firm account Respondent never told his senior partner that there was the serious problem of not being able to pay a client. At the hearing, Dr. Jain testified that Respondent's mental health has improved and that the improvement has arrested the kind of ineffective behavior that Respondent demonstrated toward Professor Dawes. Respondent now believes that his improved well being, improved organization through use of a Franklin Planner, and structural changes in his law firm (such as implementation of a written trust account policy), enable him to deal professionally with issues that arise in his practice. He has reduced his community committee involvement, he has resolved some personal issues, he has involved ALPS in reviewing the law firm's procedures, and he attended a continuing legal education program on handling client funds.

"6. Mr. Schneeberger is a sole practitioner in Leavenworth and has known Respondent professionally and socially since 1977. He offers to supervise Respondent as part of the proposed plan of supervised program. Dr. Jain and Respondent continue to meet although Respondent is no longer in treatment. Dr. Jain explored with Respondent his inability to deal with Professor Dawes' requests for information as well as his inability to ask his senior partner, Mr. Chapman, for help.

"7. Respondent's wife, Connie Baxter, testified about her own thriving business as a Mary Kay Director of a 150 member team, and how it put pressure on Respondent to take more responsibility with their three children, and about Respondent's numerous civic responsibilities. Mr. Chapman, Respondent's senior law partner, testified that he knew Respondent as a teacher and coach in Leavenworth before Respondent entered law school. When questioned about Professor Dawes contacting him with concerns about the settlement check, Mr. Chapman explained that he asked Respondent about it and was satisfied with Respondent's response that it would be handled. He supports the plan for supervised probation and will cooperate. He believes Respondent is capable and quite responsible since he has recovered from his nervous exhaustion. The firm now has regular meetings of both a Litigation Committee and a Strategic Planning Committee. On cross examination by Ms. Snyder, Mr. Chapman explained the firm's accounting practices: The firm's gross receipts are now scrutinized by an officer manager, but in 1994, each attorney reviewed the income from his own billings. In support of Respondent's character, former Representative Graeber testified about Respondent's representation of the bank in Leavenworth as well as his community involvement which could be harmed if he were publicly censured. Mr. Graeber also testified that Respondent is one of the most respected attorneys in the Leavenworth community, and that publication of discipline in this case would be 'very devastating' to Respondent's practice."

The following pertinent findings and recommendations were made by the panel:

### "CONCLUSIONS OF LAW

"Respondent's conduct violates the Model Rules of Professional Conduct Sections 1.2 [Scope of Representation, 1996 Kan. Ct. R. Annot. 261], 1.3 [Diligence, 1996 Kan. Ct. R. Annot. 264], 1.4 [Communication, 1996 Kan. Ct. R. Annot. 270], 1.7 [Conflict of Interest: General Rule, 1996 Kan. Ct. R. Annot. 283], 1.15 [Safekeeping Property, 1996 Kan. Ct. R. Annot. 302], 5.3 [Responsibilities Regarding Nonlawyer Assistants, 1996 Kan. Ct. R. Annot. 337], and 8.4 [Misconduct, 1996 Kan. Ct. R. Annot. 350]. The Panel finds from clear and convincing evidence that Respondent violated MRPC 1.2 and 1.3 when he agreed in the settlement to forego more than $6,000.00 of his fee, without discussing the compromise with his client beforehand. Afterward he looked to his client for full fee payment. Respondent's delay in communicating with his client about the fee, about the settlement check being received by the firm but deposited in the wrong account, constitutes a violation of MRPC 1.4. Respondent violated MRPC 1.7 by his intentional self-dealing adverse to his client (reducing his fee) without communicating with his client.

"Clear and convincing evidence also supports the Panel's finding that Respondent violated MRPC 1.15 in that he breached his fiduciary duty to safeguard the settlement check. Respondent was responsible to insure the check was deposited

[in] the firm's trust account. By the time the error was discovered, the firm had already spent the money on regular business expenses. Respondent shows a lack of diligence in representing Professor Dawes by repeatedly failing to respond to his client's requests for information.

"Furthermore, the Panel finds that Respondent's actions violated MRPC 8.4 when he agreed [to] compromise his fee in the settlement, but thereafter sought the full fee from his client. Such behavior adversely reflects on Respondent's fitness to practice law.

"The Panel makes no finding of clear and convincing evidence that Respondent violated MRPC Sections 1.8 [Conflict of Interest: Prohibited Transactions, 1996 Kan. Ct. R. Annot. 287] or 1.16 [Declining or Terminating Representation, 1996 Kan. Ct. R. Annot. 310]."

### "RECOMMENDED DISPOSITION

"The Disciplinary Administrator has requested the Panel find that Respondent violated MRPC 1.2, 1.3, 1.4, 1.7, 1.15, 5.3 and 8.4, and [recommend] to the Supreme Court that Respondent be disciplined pursuant to Rule 211(f) [1996 Kan. Ct. R. Annot. 215].

"In making its recommendations for discipline, the Panel has reviewed the ABA *Standards for Imposing Lawyer Sanctions*. The factors to be considered include the following: 1) whether the lawyer has violated a duty owed to the public, to the legal system or to the profession; 2) whether the lawyer acted intentionally, knowingly or negligently; 3) the amount of the actual or potential injury caused by the lawyer's misconduct; and 4) the existence of aggravating or mitigating factors.

"The evidence shows that Respondent violated duties to his client, Professor Dawes, and to the legal profession by failing to insure settlement proceeds were deposited in his firm's trust account, enabling his firm to spend the money on remodeling so that Complainant did not receive the money due him until May 1996. Furthermore, Respondent agreed to accept less than his billed fee in the settlement, without consulting his client and then expected his client to pay the full fee. Repeatedly he neglected to communicate information about the case process essential to Professor Dawes being able to make decisions and feel competently represented.

"We must then turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed.

"1. Aggravating factors.
　　a. Prior disciplinary offenses. This is not a factor.
　　b. Dishonest or selfish motive. The evidence shows that Respondent covered up the settlement payment despite repeated contact by Complainant. He did not gain exclusively. The firm account spent the funds. But he did not reveal the problems to his partner nor did he communicate with his client.

c. Patter[n] of misconduct. This is not a factor.

d. Multiple offenses. This becomes a factor by virtue of Respondent's covering up.

e. Bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary agency. This is not a factor.

f. Submission of false evidence, false statements, or other deceptive practices during disciplinary process. This is not a factor.

g. Refusal to acknowledge wrongful nature of conduct. Respondent verbalizes remorse in his testimony, but the Panel is concerned that he neglected and ignored, for over a year, the reimbursement due his client.

h. Vulnerability of the victim. Complainant testified that he hired Respondent because of his expertise even though his law office was in another city. Now Complainant faces paying another lawyer to become familiar with the case.

i. Substantial experience in the practice of law. Respondent is a 1986 law school graduate and admitted to practice and has sufficient experience to have been attentive to the duty to keep settlement funds in a trust account and promptly turn the money over to his client.

j. Indifference to making restitution. Respondent reported to the Disciplinary Administrator's investigator that he would borrow the money to pay the client (Complainant), but it was May 1996 before Complainant was paid. Further he compromised his attorneys fees in the settlement negotiations, without Complainant's knowledge, and then expected Complainant to pay the full fee.

k. Illegal conduct, including that involving the use of controlled substances. This is not a factor.

2. Mitigating factors.

a. Absence of a prior disciplinary record. Respondent has no prior disciplinary record.

b. Absence of a dishonest or selfish motive. This is not a factor.

c. Personal or emotional problems if such misfortunes have contributed to violation of the code of professional responsibility. Respondent was diagnosed with and treated for depression which contributed to poor judgment in his practice.

d. Timely good faith effort to make restitution or to rectify consequences of misconduct. This is not a factor.

e. The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions. Beginning in March 1996, Respondent's attitude and cooperation in the disciplinary process were exemplary. Respondent's Answer to the written complaint was very candid and he accepted full responsibility for his transgressions.

f. Inexperience in the practice of law. This is not a factor.

g. Previous good character and reputation. Witnesses Schneeberger, Swaran, Chapman, and Graeber testified in support of Respondent.

h. Physical disability. This is not a factor in this case.

i. Mental disability or chemical dependency including alcoholism or drug abuse when (1) there is medical evidence that the Respondent is affected by a chemical dependence or mental disability; (2) the chemical dependence or mental disability caused the misconduct; (3) the Respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely. According to Dr. Jain, the Respondent suffered from major depression, which caused the problems with Complainant. According to Dr. Jain and Respondent, the Respondent's condition is improved, and that improvement has arrested the kind of ineffective behavior that led to the problems with Complainant. Recurrence of the misconduct is unlikely, but the panel feels Respondent should be supervised and remain under the care of a psychiatrist for a two-year period of supervised probation.

j. Delay in disciplinary proceedings. This is not a factor.

k. Imposition of other penalties or sanctions. This is not a factor.

l. Remorse. Respondent testified as to his remorse, but his conduct was to delay paying a settlement to his client for more than 20 months.

m. Remoteness of prior offenses. This is not a factor.

n. Any statement by the Complainant expressing satisfaction with restitution and requesting no discipline. This is not a factor.

"After reviewing all of these factors, the Panel recommends [the] following: Respondent shall be suspended for a period of two years. This suspension shall be suspended for two years subject to supervised probation for two (2) years with the requirements that Respondent certify that he has at least $1 million in malpractice insurance coverage and that his partner, Edward Chapman, take responsibility for Respondent's conduct in the practice of law. Further, since Respondent's lack of judgment is purported to be due to his suffering from clinical depression, the Panel recommends that the Court require Respondent to be examined and assessed, at Respondent's expense, by a psychiatrist who shall file reports with the office of the Disciplinary Administrator, on a quarterly basis. Respondent's violation of any of the requirements of probation shall be sufficient basis to revoke probation. The Panel declines Respondent's request that this matter be unpublished.

"Costs should be assessed against Respondent in an amount to be certified by the Disciplinary Administrator."

We find there is clear and convincing evidence establishing the violations found and enumerated by the panel.

We adopt the findings and recommendation of the panel as modified.

IT IS THEREFORE ORDERED that imposition of discipline against respondent Jeffrey Lynn Baxter be suspended and he is placed on probation for a period of 2 years from the date of this order.

IT IS FURTHER ORDERED:

(1) During the probation period, respondent's practice of law is to be supervised by Edward Chapman, who shall take responsibility for respondent's conduct in the practice of law.

(2) Respondent shall certify to the Disciplinary Administrator that respondent is covered by at least $1 million of legal malpractice insurance coverage with a $10,000 deductible.

(3) Since respondent's lack of judgment is purported to be due to his suffering from clinical depression, respondent is to be examined and assessed, at respondent's expense, by a psychiatrist who shall file reports with the office of the Disciplinary Administrator on a quarterly basis.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order shall issue to respondent, and this court shall take whatever disciplinary actions it deems just and proper, including disbarment, without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the official Kansas Reports and that the costs of the proceeding be assessed to respondent.

DAVIS, J., not participating.